### In re SHAFFER & STERN.

(District Court, E. D. New York. March 22, 1911.)

BANKRUPTCY (§ 136*)—WITHHELD ASSETS.

A bankrupt firm, having made an unsuccessful offer to liquidate by paying 50 per cent. of their indebtedness, formed a corporation to which S., the active partner, transferred the quick assets of the firm in exchange for stock of the par value of $4,500, obtaining two others to subscribe for stock, on which each paid $500. The new corporation never assumed the debts of the firm, nor was there any call for payment of the full subscriptions of the stockholders. Certain withdrawals in large amounts by means of check, of which no record was kept, and as to which the payee had not been ascertained, but which were traced to the hands of S., amounted in the aggregate to $2,550. The stock of the corporation was admitted to be worthless, and the proceeds of its business were turned back, and at some time went back into the hands of S., who failed to explain its disappearance. *Held*, that S. was properly required to pay over to the firm's trustee the items so specifically traced to his hands.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In the matter of bankruptcy proceedings of Shaffer & Stern. On petition to review a referee's order requiring the bankrupt to turn over to the trustee certain alleged withheld assets. Report confirmed.

Eugene L. Bondy, for trustee.
Jones, McKinny & Steinbrink, for bankrupts.

CHATFIELD, District Judge. Shaffer & Stern, consisting of one Harry Shaffer and a salesman, Monroe Stern, who were doing business under an agreement between themselves, by which Stern was held out to the public as a partner, but in reality could ask from Shaffer but a salesman's share of the profits, submitted to their creditors, in the year 1909, a statement showing $4,500 of assets and $11,000 worth of debts. On this showing they offered to pay 50 cents

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on the dollar, and there is a reasonably clear explanation that certain, prior trade statements had not correctly set forth a certain second mortgage which would have materially diminished the margin of solvency of the firm.

The creditors did not accept the 50 per cent. settlement tendered. Shaffer then proceeded to secure two men for the formation of a corporation, with a capital stock of $10,000, which was taken by himself to the amount of $4,500, and in return for which he turned in the quick assets of the former partnership. One of these new men was a clerk for certain relatives of Shaffer, and drew on these relatives for, what he says was a part of his savings, a check for $500, which was all he paid down upon his stock subscription. For this $500, he received but 5 shares of stock actually issued (having subscribed for 25 shares) and was elected president. The other new investor paid in $500, and was elected vice president of the company, but soon tired of the business and paid no attention to it, so that he had no active part in the management. This investor subscribed for thirty shares of stock.

The new corporation never assumed the debts of the old firm, nor was there ever any call for payment of the full subscriptions of the new stockholders. The amount of goods purchased by the firm was about equal to the amount of cash which they put in, namely, $1,000. The books of the corporation disappeared, and were said to have been· burned by one of the new stockholders, but were produced finally; it appearing that the ones desired had not been as a matter of fact burned, even if any had been so destroyed. Certain withdrawals in large amounts, by means of checks, of which no record was kept, and as to which the payee has not been ascertained, but which have been traced into the hands of Shaffer, one of the bankrupts, amount in the aggregate to $2,550.

Upon a motion to compel Shaffer & Stern, the former partners, to turn over the assets of the partnership, which it is alleged they have concealed, the referee, as special master, has reported that Shaffer is accountable for the proceeds of the liquidation, which amount to about $2,500 (allowing the claimed depreciation of stock), and has reported that this amount, namely, $2,500, should be turned over by Shaffer. The referee, both as referee and as special master, has found that Stern, while legally responsible for these various transactions, had no hand ·in the manipulation of the assets or accounts, and has not included him in the order to turn over.

The organization of the new corporation seems to have been according to legal form, yet the business of the new corporation was actually dominated and directed by Shaffer, and the other directors and officers of the new corporation seem to have had nothing to do with its affairs. In fact, it was, except for the $1,000 of new capital, merely a cloak to dispose of the assets of the partnership of Shaffer & Stern. The stock in the new corporation, which was issued to Shaffer, has been seized by the receiver in supplementary proceedings, and the trustee in bankruptcy would seem to have a clear right to take over this stock, subject to whatever lien the receiver may have thereon. But the stock is admittedly worthless, and the corporation's

affairs, even if it were used but as a tool, have been wound up, and the proceeds of this business operation by the corporation have been turned back, and at some time were in the hands of Shaffer, who has entirely failed to explain what became of these proceeds.

Under these circumstances it must be held that the assets of the bankrupt firm were, at the time the corporation was formed, liable for the debts of the bankrupt firm, and, even if exchanged for stock in the new corporation, were thereby freed from further liability, only in the hands of an innocent purchaser for value, which the corporation might be, if honestly conducted.

Not only did the stock of the corporation issued to Shaffer become liable for his debts, but, if he in fact used the corporation in such a way that it was not in the position of an innocent holder for value, but was merely a party to the fraud, and an intermediary through which Shaffer obtained the proceeds of liquidation from the stock of goods which should have gone to the creditors of Shaffer & Stern, Shaffer should then be held liable for what has been traced into his hands out of the corporation's funds. Even the fact that the stockholders of the corporation may have been cheated by him out of the proceeds of their own investment would not affect the present situation; for the corporation's debts were paid, equaling in value the amount which the new stockholders put in, and they have no equities, as against the creditors of Shaffer & Stern, superior to the rights of those creditors.

The order of the referee related only to the large checks and items which were specifically traced into the hands of Shaffer, and as to those items the responsibility is certainly upon him to pay over the amount of these checks, or to show what became of them, and what he did with his own individual assets subsequent to the proposed settlement with his creditors, which has been above referred to.

The report will be confirmed.